UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATELYN AWAD,

     Plaintiff,

v.

REESE PUBLIC SCHOOL DISTRICT,

     Defendant.

_____/

Case No. 26-
Hon.

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

_____/

## **PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, KATELYN AWAD, by and through her attorneys,

THE MASTROMARCO FIRM, and hereby complains against Defendant, REESE

PUBLIC SCHOOL DISTRICT, stating as follows:

### **COMMON ALLEGATIONS**

1.     That Plaintiff is a resident of the County of Saginaw, State of Michigan

and is otherwise domiciled in the State of Michigan.

2.    That Defendant is a municipal entity and school district operating within the County of Tuscola, State of Michigan and is otherwise domiciled in the State of Michigan.

3.    That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

4.    That this Honorable Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.    That in or about August 2024, Plaintiff began working for Defendant School District as a fourth-grade teacher at Reese Elementary School.

6.    That for the 2025-2026 school year, Plaintiff was reassigned to teach fifth grade, staying with the students she had taught the previous school year.

7.    That Plaintiff also has a son, W.A., who experiences various disabilities.

8.    That prior to the 2025-2026 school year, Plaintiff considered enrolling her son in Defendant's Great Start Readiness Program (hereinafter referred to as "GSRP"), a pre-school program, at Reese Elementary School.

9.    That in furtherance of that consideration, during the summer months, Plaintiff met with Principal Jenna O'Driscoll and Dani Pieowiack, the teacher.

10.    That during said meeting, Plaintiff discussed with Ms. O'Driscoll and Ms. Pieowiack her son's disability-related needs and behavior regulation challenges, making Defendant aware of her son's disabilities and the concerns she had about him receiving adequate care and instruction.

11.    That in September 2024, Plaintiff's son, A.W., began attending the GRSP program.

12.    That Defendant had been put on actual notice of Plaintiff's son's disabilities, which would have triggered its "Child Find" duties imposed by federal law. *See D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 250 (3d Cir. 2012).

13.    That a school district's "Child Find" obligations require a school district to identify and evaluate whether a child is a child with a disability who may be in need of special education and related services within a reasonable time after the school are on notice that a child has a disability or where the school suspects the child likely has a disability. *See id*.; *Ja. B. v. Wilson Cnty. Bd. of Ed.*, 61 F.4th 494, 501 (6th Cir. 2023).

14.    That despite possessing knowledge that A.W. experienced several disabilities, Defendant failed to comply with its Child Find obligations and failed to evaluate whether A.W. was a child with a disability in violation of federal law.

15.    That as evidence of Defendant's knowledge of A.W.'s disabilities, on or about September 15, 2025, Ms. O'Driscoll texted Plaintiff, requesting

documentation regarding her son's diagnoses, which Plaintiff provided the following day.

16.     That Plaintiff made repeated, both written and verbal, requests that Defendant evaluate Plaintiff in accordance with its obligations under the Individuals with Disabilities Education Act and Section 504 of the Rehabilitation Act.

17.     That pursuant to Michigan law, Defendant was obligated to provide notice and a request for written consent to evaluate from Plaintiff within ten (10) days of Plaintiff's request to evaluate.  MICH. ADMIN. CODE r. 340.1721.

18.     That pursuant to Michigan law, Defendant was obligated to request consent to evaluate and after receiving such consent evaluate A.W. within thirty (30) days to determine his eligibility for services.  MICH. ADMIN. CODE r. 340.1721b.

19.     That Defendant, however, repeatedly refused to evaluate A.W. and failed to request Plaintiff's consent to do so.

20.     That on or about September 17, 2025, frustrated by Defendant's failures to evaluate, Plaintiff reached out to the Tuscola Intermediate School District to request behavioral support and to formally develop a behavior intervention plan for A.W.

21.     That Plaintiff learned that, due to her request, Tuscola ISD provided a Board Certified Behavior Analyst (hereafter referred to as "BCBA") to assist Ms. Pieowiack with a behavior intervention plan.

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

22.    That Plaintiff had also requested Defendant undertake a REED study of A.W.

23.    That a REED study refers to a "Review of Existing Evaluation Data," and involves a review of all existing available data on the student, including, but not limited to, evaluations submitted by parents, classroom or state assessments, and observations by teachers.  *See* 34 C.F.R. § 300.305.

24.    That a REED study may be included as part of an initial evaluation, if appropriate.  *See* 34 C.F.R. § 300.305(a).

25.    That despite Plaintiff's multiple requests, Defendant failed or refused to perform a REED evaluation.

26.    That on or about September 30, 2025, Plaintiff requested to meet in person with Ms. Driscoll, Ms. Pieowiack, the BCBA, who was Jennifer VanTol, Whole Child Systems Coordinator at Tuscola ISD, as Defendant was failing to comply with its legal obligations to evaluate A.W.

27.    That on or about October 7, 2025, Plaintiff met in person with Ms. Driscoll, Ms. Pieowiack, and Ms. VanTol.

28.    That Plaintiff questioned how Defendant planned on meeting A.W.'s needs as Defendant was failing to evaluate A.W., his disabilities, and his need for additional supportive services.

29.    That during said meeting, Plaintiff requested that Defendant utilize a

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

Behavior Implementation Plan; Ms. Pieowiack, however, did not want to implement such a plan as she deemed it unnecessary.

30. That by the conclusion of the meeting, Defendant agreed to have Ms. VanTol draft a Behavior Implementation Plan for A.W.

31. That on or about October 10, 2025, Plaintiff received an email from Ms. VanTol, attempting to shift responsibility for A.W.'s special education needs to Saginaw Intermediate School District.

32. That on or about October 14, 2025, Ms. O'Driscoll notified Plaintiff that Defendant had completed a Behavior Implementation Plan; however, Defendant had developed the plan without any input from Plaintiff.

33. That on or about October 17, 2025, Plaintiff met with Ms. O'Driscoll and Ms. Pieowiack to discuss the Behavior Implementation Plan.

34. That Plaintiff reported concerns with the structure of the plan and the lack of documentation or reporting to her on how A.W. did under the plan.

35. That on or about October 28, 2025, during a fire drill, Plaintiff observed A.W. while outside of the school.

36. That Plaintiff noted that the Behavior Implementation Plan was not being followed at that time.

37. That Plaintiff was required to intervene to ensure Defendant complied with the Behavior Implementation Plan.

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

38.     That over the course of approximately the following month, Plaintiff learned of additional occasions in which Defendant failed to comply with Behavior Implementation Plan.

39.     That on or about November 5, 2025, Plaintiff wrote to Ms. VanTol, requesting a meeting to discuss concerns she had with the Behavior Implementation Plan.

40.     That on or about November 6, 2025, Plaintiff met with Ms. VanTol, during which time Plaintiff reported that Defendant was not following the Behavior Implementation Plan and requested additional data and documentation as well as an adjustment to the plan itself.

41.     That on or about November 7, 2025, Ms. VanTol provided a second version of the Behavior Implementation Plan to Plaintiff and Defendant's staff.

42.     That on or about November 21, 2025, Plaintiff met with Defendant's Superintendent Jordan Ackerman, Ms. O'Driscoll, Ms. Pieowiack, Ms. VanTol, and Holly Main, Tuscola ISD Special Education Monitor.

43.     That during said meeting, Superintendent Ackerman informed Plaintiff that Defendant would not be adjusting A.W.'s Behavior Implementation Plan or otherwise making changes to his schedule or routine until Defendant could obtain data and have some time for implementation before meeting again to review.

44.     That on or about November 25, 2025, and in contradiction to the

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

directives given at the November 21, 2025 meeting, Ms. O'Driscoll informed Plaintiff that A.W. would be placed on reduced half days due to determine whether his medication is working, violating A.W.'s rights under various federal statutes.

45. That by November 25, 2025, Defendant had failed to conduct any type of special education or disability evaluation of A.W.

46. That because of or as part of those failures, Defendant failed to develop an "individualized education program" ("IEP") and, as such, there was no IEP team to evaluate or determine whether reduced half days would interfere with A.W.'s right to a "free appropriate public education" ("FAPE"), violating A.W.'s legal rights.

47. That on or about November 26, 2025, Plaintiff responded to Ms. O'Driscoll and Mr. Ackerman, complaining that decisions were being made about her child, without her input, and the decisions were changing on a daily or weekly basis.

48. That Plaintiff reported that changing A.W.'s schedule would be detrimental to the progress he had made that school year.

49. That Plaintiff also reported that if A.W.'s schedule was reduced to half days, Plaintiff's schedule would also need to be reduced and Plaintiff questioned whether it would be necessary to fill out a request for Family and Medical Leave Act leave for that purpose.

50. That Plaintiff further reported that she was hiring a special education

lawyer.

51.     That on or about December 2, 2025, Plaintiff submitted a letter from A.W.'s neuropsychologist requesting Plaintiff be placed on FMLA leave to care for her minor child, A.W. on an intermittent basis and further indicated that she would be having the neuropsychologist complete formal paperwork that evening.

52.     That also on or about December 2, 2025, Ms. Pieowiack emailed Plaintiff, informing her that Defendant had determined, again without parental involvement, that Defendant would be providing A.W. with one-on-one support along with the Behavior Implementation Plan.

53.     That on or about December 3, 2025, Plaintiff took continuous FMLA leave due to an unexpected emergency surgery.

54.     That during Plaintiff's leave of absence, she continued to communicate with Ms. Pieowiack regarding A.W.'s Behavior Implementation Plan and one-on-one support.

55.     That on or about December 11, 2025, Plaintiff received an email from Saginaw Intermediate School District, scheduling A.W. to undergo a REED evaluation on December 15, 2025, something required to be provided within ten (10) days after Plaintiff's request, which was first made in August 2025.

56.     That also on or about December 11, 2025, Plaintiff engaged in discussion with Defendant's Human Resources Department regarding Defendant's

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

refusal to pay Plaintiff for the approximately three and a half hours she worked on December 2, 2025.

57.    That Defendant was requiring Plaintiff take a full day of paid time off, neglecting to pay her for the three and half hours she worked that morning.

58.    That on or about December 12, 2025, Plaintiff communicated with the president of her union, Kevin Seeger, during which time she reported that Defendant was retaliating against her for advocating for her son's disability-related rights.

59.    That on or about December 15, 2025, Plaintiff and A.W. attended the REED evaluation meeting conducted by Saginaw ISD, which was also attended by Ms. O'Driscoll and Ms. Pieowiack.

60.    That throughout Plaintiff's leave of absence, Plaintiff repeatedly requested from Defendant written documentation on how the one-on-one support was being utilized in A.W.'s schedule; however, Defendant failed to provide such information.

61.    That on or about January 8, 2026, Plaintiff returned to work.

62.    That also on or about January 8, 2026, Plaintiff met with Superintendent Ackerman to discuss A.W.'s evaluation and potential eligibility for special education services.

63.    That on or about January 12, 2026, Plaintiff wrote Ms. Pieowiack requesting clarification regarding the one-on-one support after A.W. had an incident

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

at school.

64.    That Ms. Pieowiack responded, confirming that the one-on-one support was not in direct proximity of A.W. when the incident occurred.

65.    That also on or about January 12, 2026, Plaintiff wrote to Saginaw ISD requesting an update after the December 15, 2026 REED evaluation meeting.

66.    That due to Defendant's failures to comply with its legal obligations relative to A.W. and his disability-related needs, Plaintiff hired a special education advocate, Heather Knickerbocker.

67.    That on or about January 12, 2026, Ms. Knickerbocker sent an email to Ms. O'Driscoll and Mr. Ackerman along with Tuscola ISD and Saginaw ISD, entitled, "Formal Notice of Procedural and Substantive Violations – A.W."

68.    That in said email, Ms. Knickerbocker reported on behalf of Plaintiff that Defendant was violating Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, Michigan law, and District policy.

69.    That more specifically, Ms. Knickerbocker reported on behalf of Plaintiff the follows:

(a)    That Defendant's unilateral decision to reduce A.W.'s schedule to half-days without procedural safeguards constituted a violation of 34 C.F.R. § 104.35(c) and 34 C.F.R. § 104.33;

(b)    That Defendant exclusion of Plaintiff from placement and service decisions violated Section 504 and 34 C.F.R. § 104.35;

(c)    That Defendant failed to implement one-on-one paraprofessional

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

support as required, which violated 34 C.F.R. § 104.33 and 34 C.F.R. § 104.44;

(d)  That Defendant by restricting access to instructional time, failing to implement required supports, and failing to respond to disability-related behaviors constitutes a denial of FAPE in violation of Section 504 and 34 C.F.R. § 104.36; and

(e)  That Defendant failed to provide written documentation of the reduced schedule, of how A.W.'s one-on-one support is implemented, of its decision-making regarding exclusionary responses, and of its demonstration that less restrictive interventions were attempted and exhausted, violating procedural requirements under 34 C.F.R. § 104.36 and the District's obligations to maintain accurate records of accommodations and services provided.

70.  That Defendant did not respond to or even acknowledge receipt of Ms. Knickerbocker's email.

71.  That on or about January 13, 2026, Plaintiff learned from Saginaw ISD that they were waiting on a signature from Ms. Pieowiack, which had not been received.

72.  That Plaintiff was required to remind Ms. O'Driscoll and Ms. Pieowiack that Ms. Pieowiack needed to sign the paperwork.

73.  That also on or about January 13, 2026, Defendant required A.W. be taken home after a behavioral incident.

74.  That upon arriving at A.W.'s classroom, Plaintiff discovered that the Behavior Implementation Plan was not being followed.

75.  That after retrieving A.W. from the classroom, Plaintiff requested to

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

meet with Principal O'Driscoll and Ms. Pieowiack.

76.     That during said meeting, Plaintiff questioned the one-on-one support, at which point Principal O'Driscoll came clean.

77.     That Ms. O'Driscoll admitted to Plaintiff that A.W. did not in fact have one-on-one support as had been previously represented to Plaintiff.

78.     That not only did Ms. O'Driscoll admit Defendant had been lying to Plaintiff about the support being given to her son with disabilities, Ms. O'Driscoll then falsely claimed that Defendant did not have to provide such support, because A.W. had not had a 504 plan or IEP developed.

79.     That Ms. O'Driscoll further informed Plaintiff that Superintendent Ackerman stated that the additional paraprofessional support was a whole classroom aide rather than dedicated one-on-one support.

80.     That on or about January 13, 2025, Ms. Knickerbocker sent a second email to Ms. O'Driscoll and Mr. Ackerman along with Tuscola ISD and Saginaw ISD, attempting to clarify Defendant's legal obligations and correct the blatant misinterpretations of the law espoused by Defendant's staff.

81.     That on or about January 15, 2026, Ms. Knickerbocker sent a third email to Ms. O'Driscoll and Mr. Ackerman, again, setting forth Defendant's ongoing violations of law and clarifying Defendant's legal obligations.

82.     That on or about January 16, 2026, Plaintiff sent an email to Ms.

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

O'Driscoll and Mr. Ackerman, noting that Defendant chose to send A.W. home at a particular time so that Plaintiff would perform work without pay and that such "mistreatment" constituted retaliation for her reporting Defendant's violations of federal special education law.

83.    That on or about January 21, 2026, Ms. O'Driscoll provided Plaintiff with a parental consent form for Defendant to perform a Section 504 evaluation of A.W., something Defendant was obligated to do within ten (10) days of learning of A.W.'s disabilities.  MICH. ADMIN. CODE r. 340.1721.

84.    That Plaintiff subsequently was scheduled to meet with Defendant's representatives on January 28, 2026 for a "Section 504 meeting"; however, at the meeting, Defendant acknowledged it was a "planning meeting" as Defendant's team was not prepared to proceed with a Section 504 plan and needed additional data.

85.    That on or about February 3, 2026, and in retaliation for Plaintiff's opposition to and complaints about Defendant's discrimination of her son, Defendant attempted to deny Plaintiff intermittent FMLA leave to care for her son, by falsely claiming the medical certification form submitted by A.W.'s neuropsychologist was "vague, ambiguous, and non-responsive."

86.    That also on or about February 3, 2026, A.W.'s neuropsychologist responded to Defendant, indicating that he carefully attested that A.W. had a condition that required intermittent leave for a parent if symptoms escalate and that

said condition required weekly treatment as well as certifying A.W. had a "serious health condition" as defined by the applicable federal regulations.

87.     That after receiving the neuropsychologist's response, Defendant inexplicably approved Plaintiff's FMLA leave request despite receiving no additional information, demonstrating the pretextual nature of Defendant's attempted denial of leave.

88.     That on or about February 10, 2026, Plaintiff attended a "Section 504" Zoom meeting with Superintendent Ackerman, Principal O'Driscoll, Ms. Pieowiack, Ms. Main, Ms. VanTol, and Gene Pearce, Tuscola ISD Superintendent as well as Plaintiff's husband and Ms. Knickerbocker.

89.     That during the meeting, Plaintiff received confirmation from Superintendent Ackerman and Principal O'Driscoll that A.W. was never given one-on-one paraprofessional support as previously represented to Plaintiff and further acknowledgment that the second paraprofessional was hired for the whole classroom.

90.     That on or about February 12, 2026, Plaintiff attended an IEP eligibility meeting at which time A.W. was determined to be eligible for special education services through Saginaw Public Schools; however, Defendant's staff would participate in the IEP development meeting.

91.     That on or about February 17, 2026, Ms. Knickerbocker wrote

Defendant, requesting follow-up from the February 10, 2026 meeting and questioning when Defendant would provide the 504 Plan for review and signature.

92.     That on or about February 20, 2026, in retaliation for Plaintiff's reports of Defendant's failures to comply with various disability-related laws and those reports made on her behalf, Ms. O'Driscoll issued Plaintiff formal discipline, punishing Plaintiff for her protected activities.

93.     That Ms. O'Driscoll advised Plaintiff that discipline arose from three complaints made against Plaintiff.

94.     That according to Ms. O'Driscoll, the first and second complaints were from January 12, 2026, the date Plaintiff reported to Ms. O'Driscoll that Defendant was violating her son's civil rights and when Ms. O'Driscoll admitted that Defendant had been lying to Plaintiff about providing one-on-one support to her son.

95.     That these two complaints directly relate to and embrace Plaintiff's protected activities.

96.     That according to Ms. O'Driscoll, the third complaint was regarding brief interactions Plaintiff had with a new special education teacher, which Ms. O'Driscoll falsely claimed Plaintiff "confronted and intimidated" the new teacher; however, there was no information provided exactly how Plaintiff intimidated anyone.

97.     That Plaintiff had only three interactions with said teacher of which the

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

first occurred when Plaintiff merely introduced herself and the second and third occurred when Plaintiff sought advice and guidance for students in Plaintiff's classroom that were on said teacher's special education caseload with IEPs.

98.     That Defendant's intent to retaliate against Plaintiff for her opposition to and complaints about Defendant's violations of her son's rights is directly evidenced by said discipline.

99.     That on or about February 22, 2026, Plaintiff sent an email to School Board President Joseph Hess, entitled, "Legal and ethical concerns."

100.    That in said email, Plaintiff reported that Defendant had retaliated against her for whistleblowing activity in reporting Defendant's violation of federal special education law.

101.    That in said email, Plaintiff once again reported the numerous violations of federal special education law and the ongoing retaliation she was experiencing to President Hess.

102.    That Defendant continued to retaliate against Plaintiff by refusing to implement A.W.'s IEP Plan developed by Saginaw Public Schools.

103.    That in February 2026, Plaintiff received notice from Defendant that it would not implement the IEP developed by Saginaw Public Schools and, instead, would develop a Section 504 plan; Defendant, however, had previously informed Plaintiff that it would implement the IEP.

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

104.   That on or about March 1, 2026, Plaintiff wrote to Superintendent Ackerman and Principal O'Driscoll, copying President Hess, complaining about retaliation and stating, in part, the following:

> Over the past several months, I have engaged in advocacy regarding my son's educational rights, including raising concerns related to the District's compliance with Child Find obligations under the Individuals with Disabilities Education Act, as well as other federal and state special education requirements. My advocacy has included requesting evaluation, raising concerns regarding delays and procedural violations, and seeking compliance with the District's legal obligations to identify and evaluate students suspected of having disabilities.
>
> Since engaging in this protected advocacy, I have begun receiving verbal warnings and increased scrutiny related to aspects of my employment that had not previously been identified as concerns. The timing of these warnings raises serious concerns that adverse employment actions may be occurring in response to my protected activity.

105.   That Plaintiff further reported that her actions constituted protected activity under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, and the Michigan Whistleblowers' Protection Act as well as Defendant's Board's policy.

106.   That on or about March 11, 2026, Plaintiff provided President Hess via email with a condensed timeline of events for the Board to review.

107.   That in said email, Plaintiff also informed President Hess that she would not be returning to her employment the following school year and was actively seeking alternative employment due to the "hostile, unprofessional, and

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

intimidating behavior the administration has displayed".

108.   That Defendant intentionally made Plaintiff's working conditions so intolerable that a reasonable person would feel compelled to resign.

109.   That Defendant intentionally made Plaintiff's working conditions intolerable through numerous actions, including, but not limited to the following:

(a)   Failing to comply with its Child Find obligations regarding Plaintiff's son in violation of the Individuals with Disabilities Education Act and Section 504 of the Rehabilitation Act;

(b)   Failing to request written consent to evaluate Plaintiff's son within ten (10) days of Plaintiff's request to evaluate in violation of MICH. ADMIN. CODE r. 340.1721;

(c)   Failing to timely evaluate Plaintiff's son to determine whether he had a disability and could benefit from supportive special education services;

(d)   Failing to conduct a REED study regarding Plaintiff's son;

(e)   Failing to evaluate and develop a Section 504 plan for Plaintiff's son;

(f)   Failing to evaluate and develop an IEP for Plaintiff's son;

(g)   Failing to follow the Behavior Implementation Plan developed by Tuscola ISD;

(h)   Failing to implement an updated Behavior Implementation Plan;

(i)   Attempting to place Plaintiff's son on reduced half days due to his disability in violation of 34 C.F.R. § 104.35(c) and 34 C.F.R. § 104.33;

(j)   Failing to provide and ensure Plaintiff's son received a "free appropriate public education" in violation of Section 504 and 34

C.F.R. § 104.36;

(k)    Falsely reporting to Plaintiff that her son would receive one-on-one paraprofessional support;

(l)    Requiring on multiple occasions that Plaintiff work without pay;

(m)    Refusing to provide documentation as to how the one-on-one support was being utilized with her son;

(n)    Refusing to acknowledge and respond to Plaintiff's special education advocate's communications;

(o)    Excluding Plaintiff from decisions made regarding her son's placement and the services received in violation of Section 504 and 34 C.F.R. § 104.35;

(p)    Admitting that Defendant had lied about providing one-on-one support;

(q)    Refusing to correct or remediate numerous legal violations despite being on notice of said violations;

(r)    Attempting to deny Plaintiff intermittent FMLA leave for her son;

(s)    Issuing Plaintiff retaliatory and pretextual discipline for engaging in protected activities;

(t)    Refusing to implement the IEP developed by Saginaw Public Schools despite Defendant's representatives being involved in the development and had agreed to the IEP; and

(u)    Failing to respond to or remediate Plaintiff's complaints of retaliation.

110.    That on or about March 13, 2026, Plaintiff wrote an email to Superintendent Ackerman, Principal O'Driscoll, and President Hess, noting that she

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

had ongoing, unresolved concerns about retaliation due to her whistleblowing and that such retaliation created a conflict of interest for Principal O'Driscoll in performing a formal evaluation of Plaintiff's effectiveness as a teacher.

111.   That as such, Plaintiff requested that an alternative, external evaluation be assigned to complete Plaintiff's formal observation and evaluation.

112.   That on or about March 19, 2026, due to the ongoing issues with Defendant's failure to provide adequate services to A.W. and Defendant's retaliation against Plaintiff, Plaintiff removed A.W. from Reese Public Schools and converted her intermittent FMLA leave to a continuous FMLA leave.

113.   That subsequent thereto, Plaintiff met with Superintendent Ackerman and a Human Resources representative.

114.   That during said meeting, Defendant discussed its intent to offer Plaintiff an unsolicited severance or separation agreement.

115.   That on or about April 3, 2026, Defendant provided Plaintiff with a proposed separation agreement.

116.   That in said proposed separation agreement, Defendant requested Plaintiff not only to release it from any liability for its retaliation against Plaintiff, but also requested Plaintiff to release Defendant from any liability to A.W.

117.   That said separation agreement was imposed to protect Defendant from the legal consequences of its ongoing retaliation against Plaintiff and its multiple

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

legal violations of Plaintiff's son's rights.

118. That on or about April 3, 2026, Plaintiff notified Superintendent Ackerman that she was unwilling to sign the agreement as drafted.

119. That into mid-April 2026, Plaintiff sent numerous emails to Defendant's staff, attempting to establish the plan for her return to work after her FMLA leave entitlement was exhausted.

120. That Defendant refused to respond to Plaintiff's emails.

121. That on or about May 7, 2026, Defendant shut off all of Plaintiff's digital access to Defendant's electronic systems.

122. That while Plaintiff had been on a continuous FMLA leave since March 2026, Defendant did not shut off Plaintiff's digital access when she started her FMLA leave and when she had previously been on continuous FMLA leave in December 2025.

123. That Defendant intentionally shut off Plaintiff's digital access after Plaintiff had notified Defendant of her intent to file a complaint with the U.S. Department of Education's Office of Civil Rights, which has a 180-day deadline to file, and did so to interfere with her ability to do so and constitutes further retaliation.

124. That notwithstanding Plaintiff's multiple attempts to plan for her return to work, Defendant retaliated against Plaintiff by refusing to respond to Plaintiff's inquiries and preventing her from returning to work.

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

125.   That on or about May 10, 2026, Superintendent Ackerman sent Plaintiff an email to her personal email address, providing notice that Defendant had placed her on paid administrative leave through the end of the school year.

126.   That Defendant continued to retaliate against Plaintiff through the end of her employment.

127.   That Defendant's actions constitute retaliation in violation of 42 U.S.C. § 1983 and the First Amendment.

128.   That Defendant's actions constitute retaliation in violation of the Michigan Persons with Disabilities Civil Rights Act.

129.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain economic damages, including, but not limited to, lost wages, back pay, front pay, bonuses, raises, health, dental, vision, and/or life insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any and all other compensation and fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

130.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, disruption of

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

lifestyle, and denial of social pleasures.

131.   That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

132.   That Plaintiff hereby claims reasonable attorney fees pursuant to M.C.L. § 37.1606.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

### COUNT – RETALIATION IN VIOLATION OF 42 U.S.C. § 1983 & THE FIRST AMENDMENT

133.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 132 of her Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

134.   That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

135.   That the First Amendment prohibits government from "abridging the freedom of speech." U.S. CONST. amend. 1.

136.   That Plaintiff engaged in constitutionally protected speech and conduct by opposing and reporting to Defendant that it was violating federal special

education laws in the treatment of her son and other students with disabilities.

137.   That Plaintiff's protected speech was made as citizen-speech.

138.   That Plaintiff's protected speech was not made pursuant to her ordinary job duties performed on a day-to-day basis.  *See DeCrane v. Eckart*, 12 F.4th 586, 596 (6th Cir. 2021).

139.   That Plaintiff's speech involved a matter of public concern.

140.   That speech addressing "discrimination of some form" is speech that involve matters of public concern.  *See Myers v. City of Centerville, Ohio*, 41 F.4th 746, 760-761 (6th Cir. 2022); *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 181-182 (6th Cir. 2008); *see also Miller v. City of Canton*, 319 F. App'x 411, 416 (6th Cir. 2009)("Allegations of racial discrimination by a public entity 'inherently' involve a matter of public concern.").

141.   That speech addressing

142.   That Plaintiff's interest in reporting the disability discrimination and violations of federal outweigh any interest Defendant had in regulating said speech.

143.   That Defendant had no legitimate interest in regulating Plaintiff's speech.

144.   That Defendant took materially adverse actions against Plaintiff.

145.   That Defendant took actions against Plaintiff that would likely chill a person of ordinary firmness from continuing to engage in protected activity.

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

146. That Defendant took multiple adverse actions against Plaintiff, including, but not limited to, refusing to pay Plaintiff for work performed, issuing a retaliatory discipline, and constructively discharging her from employment.

147. That Plaintiff's protected speech was a substantial or motivating factor in the decisions by Defendant to take adverse action.

148. That a causal connection exists between Plaintiff's protected speech and the adverse actions.

149. That Defendant would not have taken said adverse actions in the absence of Plaintiff's protected speech.

150. That Defendant's discipline of Plaintiff for engaging in protected speech directly evidences Defendant's retaliatory intent.

151. That at all times material hereto, Defendant acted pursuant to an official policy or custom.

152. That the above-referenced adverse actions were taken by individuals to whom final decision-making and/or policy-making authority had been delegated.

153. That Defendant had a policy of inadequate training or supervision.

154. That Defendant had a custom of tolerance or acquiescence to federal rights violations.

155. That Defendant continued to retaliate against Plaintiff through the end of her employment.

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

156.   That Defendant's actions constitute retaliation in violation of 42 U.S.C. § 1983 and the First Amendment.

157.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain economic damages, including, but not limited to, lost wages, back pay, front pay, bonuses, raises, health, dental, vision, and/or life insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any and all other compensation and fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

158.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

159.   That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II – RETALIATION IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

160. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 132 of her Common Allegations and paragraphs 133 through 159 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

161. That the Michigan Persons with Disabilities Civil Rights Act makes it unlawful for a person to "[r]etaliate or discriminate against a person because the person has opposed a violation of th[e] act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under th[e] act."  M.C.L. § 37.1602(a).

162. That the Persons with Disabilities Civil Rights Act makes it unlawful for a  person to "[c]oerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted" by the Act.  M.C.L. § 37.1602(f).

163. That the Persons with Disabilities Civil Rights Act makes it unlawful for an educational institution to discriminate in the full utilization of or benefit from the institution or the services provided or to otherwise discriminate against an individual enrolled as a student due to a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services.  M.C.L. § 37.1402(a)-

(b).

164.    That Plaintiff engaged in activity protected by the Persons with Disabilities Civil Rights Act by opposing and complaining about the disability discrimination experienced by her son, including, but not limited to, reporting numerous violations of anti-disability discrimination statutes.

165.    That Defendant knew of Plaintiff's protected activities.

166.    That Defendant took multiple adverse actions against Plaintiff, including, but not limited to, refusing to pay Plaintiff for work performed, issuing a retaliatory discipline, and constructively discharging her from employment.

167.    That a causal connection exists between Plaintiff's protected activities and the adverse employment actions.

168.    That Defendant lacked a legitimate, nondiscriminatory reason for taking said adverse actions.

169.    That any reasons proffered by Defendant for taking said adverse actions are pretextual in nature.

170.    That any reasons proffered by Defendant for taking said adverse actions are either not based in fact, did not actually motivate the decision, and/or were too insignificant to warrant the action taken.

171.    That Defendant's actions constitute retaliation in violation of the Michigan Persons with Disabilities Civil Rights Act.

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

172. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain economic damages, including, but not limited to, lost wages, back pay, front pay, bonuses, raises, health, dental, vision, and/or life insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any and all other compensation and fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

173. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

174. That Plaintiff hereby claims reasonable attorney fees pursuant to M.C.L. § 37.1606.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

THE MASTORMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>July 14, 2026</u>  By: */s/ Victor J. Mastromarco, Jr.*

VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414

## PLAINTIFF'S DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, KATELYN AWAD, by and through her attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury on all the above issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: July 14, 2026    By:   */s/ Victor J. Mastromarco, Jr.*
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414